IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

LIEUTENANT PATRICE LAMBERT,

    Plaintiff,

v.    Civil Action No. 3:14-cv-24354

JURY TRIAL DEMANDED

CABELL COUNTY COMMISSION,
CABELL COUNTY SHERIFF'S DEPARTMENT,
CHIEF DEPUTY DOUG FERGUSON, and
SHERIFF THOMAS MCCOMAS,

    Defendants.

## COMPLAINT

Now comes Plaintiff Lieutenant Patrice Lambert ("Lt. Lambert"), by counsel, and makes and files her Complaint against the Cabell County Commission, Cabell County Sheriff's Department, Chief Deputy Doug Ferguson, and Sheriff Thomas McComas (collectively, "Defendants"), as follows:

### PARTIES

1. Lt. Patrice Lambert worked as a Deputy Sheriff for Cabell County, West Virginia for nearly 30 years. On August 25, 2012, she was unlawfully terminated from her employment in violation of Title VII of the Civil Rights Act of 1964, the West Virginia Human Rights Act, and West Virginia common law prohibiting retaliation against individuals who file claims of unlawful discrimination. Lt. Lambert is a resident of Cabell County, West Virginia.

2. Defendant Cabell County Commission ("CCC") is a political subdivision existing in Cabell County, West Virginia. CCC is a co-employer and/or joint employer of Lt. Lambert along with the Defendant Cabell County Sheriff's Department.

3. Defendant Cabell County Sheriff's Department ("CCSD") provides law enforcement and home confinement services in Cabell County, West Virginia. It is a co-employer and/or joint employer of Lt. Lambert along with Defendant CCC.

4. Defendant Chief Deputy Doug Ferguson ("Chief Ferguson") is the Chief Deputy of the Cabell County Sheriff's Department. He is a resident of Cabell County, West Virginia.

5. Defendant Sheriff Thomas McComas ("Sheriff McComas") has been the Sheriff of Cabell County since January 1, 2009. He is a resident of Cabell County, West Virginia.

6. At all times relevant hereto, Defendants were acting through their agents, supervisors, directors, officers, employees and assigns and within the full scope of such agency, office, employment, or assignment.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the claims asserted herein in accordance with 28 U.S.C. §1331 as Lt. Lambert's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq., as amended, along with pendent state law claims under the West Virginia Human Rights Act and West Virginia common law prohibiting unlawful retaliation against individuals who file claims of unlawful discrimination.

8. Venue is appropriate in the U.S. District Court for the Southern District of West Virginia pursuant to 28 U.S.C. §1391(a)(1), because Defendants exist and reside in Cabell County, West Virginia, which is within the jurisdiction of this Court.

## FACTS

9. Lt. Lambert was hired as a Deputy Sheriff of Cabell County in 1982.

10. Sheriff McComas assumed the office of Sheriff on January 1, 2009. At that time, his administration inherited three female employees who were hired prior to the time he assumed office: (1) Lt. Lambert -- the only female Deputy Sheriff among approximately 39 male Deputy Sheriffs; (2) Cindy "Shellie" Stiltner – one of only two female home confinement officers among approximately 8 male home confinement officers; and (3) T.S. –the only other female home confinement officer among approximately 8 male home confinement officers.

11. T.S. resigned in November, 2009, eleven months after McComas assumed office.

12. Cabell County Commissioner Bob Bailey has given sworn testimony about a conversation that took place between him and Sheriff McComas during calendar year 2011:

"Well, I was standing out in the hallway by the commission chambers, and I said, 'Why don't you consider hiring a couple women deputies, because you don't have but one and it's hard for her to search all of them women prisoners and things you're bringing in here?' **His [McComas's] reply to me was that he didn't want any women in uniform around him.**"

13. On July 29, 2011, Sheriff McComas unlawfully fired Shellie Stiltner, the only remaining female home confinement officer.

14. On August 25, 2012, Sheriff McComas unlawfully fired Lt. Lambert, the only female Deputy Sheriff.

15. Sheriff McComas's asserted reason for terminating the employment of his only female Deputy Sheriff and the only remaining female home confinement officer was that they had failed to pass firearms qualifications under CCSD's firearms policy –"General Order 03-38." That is, Sheriff McComas claimed that he *was required* to fire these women because they were unable to demonstrate competency in the use of a firearm and were unable to protect themselves.

16. Sheriff McComas's asserted reason for firing these two females is absolutely false and pretextual.

    (a) General Order 03-08 applied to Sheriff McComas, himself, each of the Deputy Sheriffs, each of the home confinement officers, and the Director of Home Confinement, Oscar Adkins. Pursuant to the General Order, all such individuals were required to "successfully qualify twice a year with the departmental firearms instructor." In the event that any of these individuals failed to qualify, General Order03-08 provided that the officer was to be given a "remedial block of instruction" on the fundamentals of marksmanship and be afforded two additional attempts to qualify. General Order 03-08 further provided, "In the event that the authorized member is still unable to qualify, their employment will be terminated."

    (b) Despite the provisions of "General Order 03-38," Defendants did not enforce such policy consistently, uniformly, or at all.

    (c) Defendants have no firearms records to evidence that officers qualified twice a year.

    (d) Defendants –and especially Chief Ferguson, the lead firearms instructor-- encouraged individuals to cheat in order to pass the firearms qualifications course. That is, it is unknown *who* legitimately passed the course and *who* did not.

    (e) Defendants have no firearms records to evidence that Sheriff McComas has qualified twice a year since 2009. The Deputy Sheriffs joke about the fact that Sheriff McComas has not qualified.

    (f) Defendants have no firearms records to evidence that Director of Home Confinement, Oscar Adkins, qualified twice a year since 2009 up until the time of his retirement in 2012.

    (g)    Defendants have no firearms records to evidence that *anyone* qualified – even once–for a 16-20 month period between the Spring of 2009 and the Fall of 2010.

    (h)    The existing firearms records reflect that individuals were not given a uniform number of attempts to qualify under the policy –i.e. some individuals were given more attempts than others. Indeed, a male home confinement officer was given five attempts to qualify just before Stiltner was terminated from employment after she had had only four attempts to qualify. Lt. Lambert was terminated from employment thereafter, after she had had only four attempts to qualify.

    (i)    Defendants allowed male officers to make up rounds when they misfired, although Lt. Lambert was not permitted to do so. Defendants also allowed male officers to have more favorable opportunities to qualify.

17. The stated reason for discharging both Lt. Lambert and Shellie Stiltner from employment was pre-textual and a cover-up for the true reasons that motivated Defendants to fire them. Lt. Lambert and Shellie Stiltner are the only two individuals who have ever been terminated from employment for alleged failure to qualify under the General Order, although Defendants encouraged males to cheat to pass the course, permitted males more favorable opportunities and a greater number of attempts to pass the course, and failed to keep accurate records to reflect that anyone has passed the course twice a year, including the Sheriff himself.

18. Defendants were motivated to terminate the employment of both Lt. Lambert and Shellie Stiltner based upon their gender, female, and they subjected Lt. Lambert and Shellie Stiltner to disparate treatment.

19. Immediately following Lt. Lambert's unlawful termination, a male Deputy Sheriff was promoted and given Lt. Lambert's position as Lieutenant.

20. Defendants were also motivated to terminate the employment of Lt. Lambert because (1) Lt. Lambert had filed and resolved a previous charge of unlawful discrimination with the Equal Employment Opportunity Commission in the previous months; and (2) Lt. Lambert had been named as a witness in Ms. Stiltner's Charge of Gender Discrimination filed with the EEOC following her own unlawful termination.

21. On December 28, 2012, Lt. Lambert filed a second charge of discrimination with the Equal Employment Opportunity Commission under Title VII of the Civil Rights Act of 1964, as amended.

22. Following Lt. Lambert's termination, Lt. Lambert also initiated proceedings to be reinstated to her employment through the Cabell County Civil Service Commission.

23. On August 21, 2013, almost one year after her unlawful termination, the Cabell County Civil Service Commission heard evidence regarding Lt. Lambert's petition for reinstatement. Just prior to that hearing, Chief Ferguson *created* at least three memos regarding firearms qualifications that did not previously exist. The memos were backdated by Chief Deputy to state dates for years prior, including at least one memo backdated four years prior to September 14, 2009. That memo purported to document alleged events related to Lt. Lambert's firearms qualifications that did not occur. The creation of the memos was fraudulent and an attempted cover-up for the discrimination and retaliation that had occurred.

24. In late June and early July of 2014, Defendants CCC, CCSD, and Sheriff McComas learned that Chief Ferguson had created another fraudulent document on agency letterhead –i.e. a letter that requested video surveillance from the Mardi Gras Casino & Resort. Chief Ferguson requested the video of two individuals under the false pretense that he was conducting an investigation of the two individuals in a destruction of property case. In fact, the Casino later confirmed that there was no such investigation; rather, Chief Ferguson had used both his position as the Chief Deputy of Cabell County and agency letterhead to request surveillance video of his ex-girlfriend. Despite the fact that a West Virginia State Police investigation determined that Chief Ferguson had committed this fraudulent conduct, Chief Ferguson, a male, remains employed with Defendants CCC and CCSD. Chief Ferguson has been afforded more favorable terms of employment than Lt. Lambert and Shellie Stiltner.

25. On July 3, 2014, Lt. Lambert was issued the Notice of Right to Sue letter that is attached as Exhibit A.

26. As a direct and proximate result of Defendants' conduct, Lt. Lambert has suffered lost wages and benefits, lost retirement benefits, emotional distress, humiliation, embarrassment and ridicule, and other compensatory and general damages.

**COUNT ONE: UNLAWFUL DISCRIMINATION AND RETALIATION
IN VIOLATION OF
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED
(DEFENDANTS CCC AND CCSD)**

27. Lt. Lambert reincorporates herein each of the preceding paragraphs 1-26 as if set forth verbatim herein.

28. At all times relevant hereto, Defendant Cabell County Commission and/or Defendant Cabell County Sheriff's Department was an "employer" within the meaning of 42 U.S.C. §2000e (b).

29. At all times relevant hereto, Lt. Lambert was an "employee" within the meaning of 42 U.S.C. § 2000e (f).

30. During the course of her employment, Lt. Lambert was subjected to less favorable terms and conditions of employment than male employees because of, or on the basis of, her gender, female, and/or because of, or on the basis of the fact that she had filed –and resolved only months earlier --an unlawful discrimination charge with the EEOC.

31. Through Defendants CCC and CCSD's unlawful conduct, they have acted to discriminate against Lt. Lambert based upon her gender, and to retaliate against her for opposing discrimination, in violation of 42 U.S.C. § 2000e-2 (a) and 42 U.S.C. §2000e-3 (a).

32. As a direct result of Defendants CCC and CCSD's unlawful conduct, Lt. Lambert has suffered injury and damages, including but not limited to, lost wages and benefits, emotional distress, humiliation, mental anguish and other damages for which Defendants are liable. Lt. Lambert also seeks full reinstatement and seniority.

33. Based upon Defendant CCC and CCSD's willful, reckless, and/or malicious conduct, Lt. Lambert is entitled to recover punitive damages.

34. Lt. Lambert is also entitled to recover her attorneys' fees and costs.

## COUNT TWO: UNLAWFUL DISCRIMINATION AND RETALIATION IN VIOLATION OF THE WEST VIRGINIA HUMAN RIGHTS ACT (ALL DEFENDANTS)

35. Lt. Lambert reincorporates herein each of the preceding paragraphs 1-34 as if set forth verbatim herein.

36. At all times relevant hereto, Defendant Cabell County Commission and/or Defendant Cabell County Sheriff's Department was an "employer" within the meaning of the West Virginia Human Rights Act, W.Va. Code §5-11-3(d).

37. At all times relevant hereto, Defendants McComas and Ferguson were "persons" within the meaning of the West Virginia Human Rights Act, W.Va. Code Section 5-11-7.

38. At all times relevant hereto, Lt. Lambert was an "employee" within the meaning of the West Virginia Human Rights Act, W.Va. Code § 5-11-3(e).

39. During the course of her employment, Lt. Lambert was subjected to disparate treatment and less favorable terms and conditions of employment than male employees because of, or on the basis of, her gender and/or because of, or on the basis of the fact that she had filed –and resolved only months earlier --an unlawful discrimination charge with the EEOC.

40. Through Defendants' unlawful conduct, Defendants have acted to discriminate against Lt. Lambert based upon her gender and to retaliate against her for opposing discrimination, in violation of the West Virginia Human Rights Act, W.Va. Code §5-11-1 *et. seq.*

41. As a direct result of Defendants' unlawful conduct, Lt. Lambert has suffered injury and damages, including but not limited to, lost wages and benefits, emotional distress, humiliation, mental anguish and other damages for which Defendants are liable. Lt. Lambert also seeks full reinstatement and seniority.

42. In lieu of reinstatement (and alternatively), Lt. Lambert is entitled to unmitigated lost wages based upon Defendants' malicious conduct,.

43. Based upon Defendants' willful, reckless, and/or malicious conduct, Lt. Lambert is entitled to recover punitive damages.

44. Lt. Lambert is also entitled to recover her attorneys' fees and costs.

### COUNT THREE: UNLAWFUL RETALIATION IN VIOLATION OF PUBLIC POLICY (ALL DEFENDANTS)

45. Lt. Lambert reincorporates each of the foregoing paragraphs 1-44 as if each were restated herein.

46. Through their unlawful conduct, Defendants engaged in a scheme of retaliation against Lt. Lambert after she filed a charge of unlawful discrimination with the EEOC, ultimately resulting in her retaliatory and discriminatory discharge in violation of the public policy established by the West Virginia Human Rights Act, W.Va. Code § 5-11-9. *See Harless v. First National Bank of Fairmont.*

47. As a direct result of Defendants' unlawful conduct, Lt. Lambert has suffered injury and damages, including but not limited to, lost wages and benefits, emotional distress, humiliation, mental anguish and other damages for which Defendants are liable. Lt. Lambert also seeks full reinstatement and seniority.

48. In lieu of reinstatement (and alternatively), Lt. Lambert is entitled to unmitigated lost wages based upon Defendants' malicious conduct.

49. Based upon Defendants' willful, wanton, and malicious conduct, Lt. Lambert is entitled to punitive damages.

50. Plaintiff is entitled to recover her attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Lt. Lambert prays for the following relief:

(a) That she may have a trial by jury;

(b) That she be awarded all damages provided by law, including but not limited to, lost wages and benefits, damages for emotional distress, humiliation and mental anguish, and other damages for which Defendants are liable;

(c) That she be reinstated, or alternatively, that she be awarded unmitigated front pay;

(d) That she be awarded punitive damages;

(e) That she be awarded attorneys fees and costs;

(f) That she be awarded such other relief as this Court may deem as just and equitable.

**LIEUTENANT PATRICE LAMBERT**

*By Counsel*

_____
Maria W. Hughes, Esq. (WV Bar No. 7298)
Mark Goldner, Esq. (WV Bar No. 11286)
HUGHES & GOLDNER, PLLC
10 Hale Street, Fifth Floor
P.O. Box 11662
Charleston, West Virginia 25339
(304) 400-4816
(304) 205-7729 *facsimile*
maria@wvemploymentrights.com
mark@wvemploymentrights.com